| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | RESPONSE IN OPPOSITION TO |
| v. | ) | DEFENDANT'S MOTION TO DISMISS |
| | ) | INDICTMENT AND REQUEST FOR |
| MILTON ERMILO ARREAGO ROBLERO | ) | HEARING |
| | ) | [D.E. 22] |
| | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to the Defendant's Motion to Dismiss Indictment and Request for Hearing. D.E. 22. In support of this response, the United States respectfully states as follows:

## INTRODUCTION

The Court should deny Defendant's motion to Dismiss Indictment and Request for Hearing for several reasons. First, the issue of whether the Government can prove each element of the offense is based on a factual dispute not a statutory interpretation dispute. Therefore, it is a matter for a jury to decide. Second, the Federal Deportation Officers (FDO) made an objectively reasonable mistake in attempting to seize the Defendant. Third, a motion to dismiss is not the appropriate remedy for alleged excessive force by officers. Finally, the Court should not dismiss the indictment relying on its supervisory powers due to the Defendant's failure to show deliberate governmental misconduct. Accordingly, and for all the reasons set forth below, Defendant's motion should be denied.

1

## PROCEDURAL HISTORY

A criminal complaint filed December 3, 2025, charged the Defendant with violating 18 U.S.C. § 111 alleging he did forcibly, assault, resist, oppose, impede, intimidate, and interfere with Federal Deportation Officers who were engaged in their official duties. D.E.1. The affiant on the Complaint was Gregory. S. Garey, a Special Agent with the Federal Bureau of Investigation. Id. On December 5, 2025, the Defendant had an initial appearance and subsequently moved to continue the probable cause and detention hearings to December 16, 2025. D.E. 5, 10. On December 16, 2025, the Grand Jury returned an indictment charging the Defendant under 18 U.S.C. § 111(a) and (b) and 18 U.S.C. § 1361. D.E. 12. In Count One, the Defendant was alleged to forcibly assault, resist, oppose, impede, intimidate, and interfere with any person designated in 18 U.S.C. § 1114, to wit: federal deportation officers who were engaged in official duties and caused physical contact, and used a deadly or dangerous weapon, and acted with the intent to commit another felony. Id. Count Two alleged the defendant willfully damaged three government vehicles, resulting in damages greater than $1,000. That same day, a detention hearing was held by United States Magistrate Judge Robert T. Numbers II, and after reviewing the evidence, he ordered Mr. Roblero detained pending trial. D.E. 17.

## FACTS

A.  Previous Surveillance and Arrests of Target 1

On November 13, 2025, Target 1 was arrested for contributing to the delinquency of a juvenile. Target 1 is a male born in 2001 in Guatemala and is

2

approximately 5 feet 6 inches tall and weighs about 155 pounds. For reference, the Defendant is a male born in 2002 in Guatemala and is approximately 5 feet tall and weighs about 110 pounds.

Prior to the arrest, law enforcement conducted surveillance at Sangam Mart in Morrisville, North Carolina. Officers who possessed an arrest warrant for Target 1 followed him from Sangam Mart, conducted a traffic stop, and took him into custody in Morrisville. At the time, Target 1 was driving a 2012 white Hyundai Accent registered to Maynor Construction, with an associated address of 10211 Chapel Hill Road, Morrisville, North Carolina. One of the registered agents for the business was Target 1.

The November arrest stemmed from a kidnapping investigation conducted by the Fuquay-Varina Police Department in which Target 1 was identified as a suspect. Following his arrest on state charges, Target 1 provided the address of 10211 Chapel Hill Road, Morrisville, North Carolina, and was found to have no valid driver's license. An email was sent from the jail to Homeland Security Investigations (HSI) to determine whether the defendant was subject to an Immigration and Customs Enforcement (ICE) detainer and administrative warrant. Before HSI could respond, the magistrate released Target 1 on bond. The conditions of release listed a Cary, North Carolina address. Several hours after the release, HSI became aware of Target 1 and his release. His booking record listed the address of 10211 Chapel Hill Road in Morrisville. A Federal Deportation Officer (FDO-3) was then tasked by a supervisor

with locating Target 1, who had an administrative warrant for removal. FDO-3 was informed that Target 1 had a booking record with a Morrisville address and was believed to work at Sangam Mart.

On November 29, 2025, FDO-1 conducted surveillance at 10211 Chapel Hill Road in Morrisville, North Carolina. FDO-1 positioned himself approximately 200 yards from the residence and used binoculars to observe activity. During the surveillance, multiple individuals were seen entering and leaving the residence; however, only one individual matched the description of Target 1.[1]

B. Arrest and Bases for Indictment

FDO-1 coordinated with the rest of the team to develop a plan to take Target 1 into custody on December 2, 2025. The operational team consisted of five Federal Deportation Officers and three members of a Quick Reaction Force. FDO-1 led the planned administrative arrest of Target 1 and drove a black Jeep Cherokee. FDO-2 drove a black 8-passenger Subaru Ascent. FDO-3 drove a silver Hyundai Tucson.

On December 2, 2025, FDO-1 advised the team by radio that the target had departed 10211 Chapel Hill Road in Morrisville, the residence Target 1 had had listed on his booking paperwork for his state arrest. FDO-1 reported that the target had entered a red Honda Civic and was traveling in the direction of Sangam Mart. FDO-

---

[1] A 302 indicates that FDO-1 originally indicated Target 1 exited the residence and drove a red Honda Civic. A follow up report indicates that Target 1 left his residence with two unknown males and entered a large white truck.

1 followed Target 1, with FDO-2 following FDO-1. FDO-3 was already positioned near Sangam Mart and was seated in his vehicle.

When FDO-3 observed the red Honda Civic approaching (actual time 10:41:09 a.m.), he moved his vehicle into position and blocks the Honda as it enters the shopping complex. (10:41:17 a.m.)[2] FDO-3's Hyundai Tucson had his blue emergency lights activated. FDO-1 and FDO-2 maneuvered their vehicles into position in an attempt to block the red Honda Civic. (10:41:19 a.m.) FDO-1's vehicle also had blue emergency lights activated. FDO-3 then exited his vehicle. (10:41:21 a.m.) He was not wearing a face covering and was wearing a vest clearly marked "POLICE" in large white lettering. FDO-3 then began moving towards the front of Hyundai Tucson vehicle with his hand out giving commands. (10:41:23 a.m.) As soon as the officer stepped out of the vehicle, the Honda's reverse lights came on, and the defendant quickly backed the Honda up with enough force that the rear of the vehicle lifted slightly as it struck the front of FDO-1's vehicle. (10:41:24 a.m.)

As FDO-2 continued moving forward to assist in blocking the vehicle, the driver of the red Honda Civic began to drive forward while turning the wheels to the left. FDO-3, fearing that the vehicle might strike him, visibly moved backwards with his hand out to avoid being hit. (10:41:25 a.m.). The Honda then collided with the Subaru driven by FDO-2 as the Subaru was still driving straight. (10:41:26 a.m.) The Defendant in the Honda tried to get between the two cars to avoid being boxed in.

---

[2] All times references are from the CNETGEEK video on D.E. 22 Defense Exhibit 2.

5

FDO-2 continued moving forward, pushing the Honda into the Hyundai that had been driven by FDO-3. (10:41:27 a.m.). The Honda continued to accelerate forward after this collision, and FDO-2 stopped proceeding forward (10:41:28 a.m.) FDO-2 then proceeded forward again, attempting to stop the Honda from proceeding, and pushed the Honda into a parked Porsche. (10:41:29-:34 a.m.)

At the time of the incident, FDO-4 was inside Sangam Mart. FDO-4 had been assigned to the Thai 54 restaurant located within the same shopping complex. On the day of the operation, FDO-1 had asked FDO-4 via radio to observe whether any vehicles seen at the Chapel Hill Road residence were present in the Sangam Mart parking lot. FDO-4 believed that one vehicle matched the description. He then entered the grocery store to verify that the individuals inside were not the people being sought. During the vehicle stop and arrest attempt, FDO-4 remained inside the grocery store conducting his assigned role in the operation. FDO-5 was near the scene but at another location.

After the Honda collided with the Porsche, the driver was taken into custody. FDO-2's vehicle was removed from behind the Honda to allow access to the vehicle. When the FDOs asked him his name, they learned the driver was not Target 1 but was the Defendant. While conducting a background check on scene, FDOs learned that the defendant also had an administrative warrant, and so he was detained on that warrant as well.

6

Morrisville Police Officer Kim Davis reported to the scene. Prior to arrival, she initiated her blue lights and sirens in her patrol vehicle which automatically activated her body worn camera (BWC) and dash camera. While on scene, she realized the scene was no longer an active assault on officers, and she manually turned off her BWC to conserve battery, following her normal practice. When Officer Davis turned her camera off manually, an error occurred in the Morrisville Police Department system, and the footage from her BWC did not download or save. Officer Davis did not interview Mr. Roblero as he was transported via ambulance to be medically cleared. Estimates were retrieved for each of the vehicles exceeding a cumulative total of $1,000.

### ARGUMENT

**I. A Motion to Dismiss is Not the Appropriate Vehicle to Litigate a Factual Dispute.**

"To pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecution for the same offense." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir.1998). "A district court may dismiss an indictment under Rule 12 'where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial.'" *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (citing *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)).

This situation a classic factual dispute. The Defendant offers an interpretation of the facts in the video. The Government, respectfully, has a different interpretation of these facts. Therefore, the appropriate remedy is for the defendant to plead not guilty and for the Government to prove its case to a jury.

To avoid that black-letter law, the Defendant cites a footnote in *United States v. Weaver*, 659 F.3d 353, 356 (4th Cir. 2011), that states, "A district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the authority of the court to reach the motion, and proffers, stipulates, or otherwise does not dispute the pertinent facts." D.E. 22 at 8 (quoting *Weaver*, 659 F.3d at 355 n.*). In *Weaver*, the Court was deciding a pure issue of law. The District Court had dismissed an indictment based on its interpretation of what the word "employed" meant in a statute. *Id* at 355. The "government did not challenge the trial court's authority to decide the motion, and it conceded" the only relevant facts. *Id*. at 355 n.*. In that unique circumstance, "[t]here [was] no good reason to force the court to incur the expense and delay of a trial that would inevitably lead to the same outcome as [the District Court's] pretrial ruling." *Id.*

Here, the Defendant argues that the Government cannot meet its burden to prove "forcible" assault or the defendant's intent under Counts One and Two. D.E. 22 at 9-12. He is not disputing what §§ 111 and 1361 mean; it is whether the video and other evidence, including the on-scene officers' testimony, can prove whether the defendant acted forcibly and what he intended as he drove his car that day. Again, this is fundamentally a fact dispute, which is a matter for the jury.

8

The Defendant attempts to create a legal issue by arguing that "using a car purely for flight does not satisfy the forcible element." D.E. 22 at 9 (citing *United States v. Arrington*, 309 F.3d 40, 42 (D.C. Cir. 2002)). Yet fleeing to escape can constitute the bases for forcible assault under § 111. In *Arrington*, the D.C. Circuit merely held that § 111(a) (but not § 111(a)) required the defendant must use a car "as a deadly weapon and not simply as a mode of transportation." 309 F.3d at 45. The *Arrington* defendant attempted to flee a traffic stop, and the court ultimately held that his actions met the forcible requirement to violate § 111.

The Fourth Circuit, in an unpublished decision, agreed. It found that the forcible element was met when a defendant accelerated his vehicle towards a car carrying two agents, striking the agents' car and a parked car to squeeze through the space, then drove away. *United States v. Alvarez*, 445 F. App'x 715, 717 (4th Cir. 2011) (holding that the elements were met for one assault not two when only one assaultive action was taken).

The Defendant also cites *United States v. Johnson*, 126 F.4th 1000, 1004 (4th Cir. 2025) to define forcibly as "any deliberate and intentional attempt or threat to inflict physical injury upon another with force or strength when that attempt or threat is coupled with an apparent present ability to do so." D.E. 22 at 9. Directly after this quote, the Court also states, "Although forcible assault may be committed by a defendant without actually touching, striking or doing bodily harm to another. The Government must prove that the actions of the Defendant were of such a nature to put the person against whom they are directed in fear of immediate bodily harm." *Id* at 1004 (quoting approvingly the District Court's jury instructions).

Here, the question of whether the Defendant's actions were forcible is a question for the jury. The cases he cites support rather than preclude prosecution under § 111 when a defendant fled law enforcement. If the Defendant does not believe that the facts here prove his intent or a forcible assault, his remedy is to plead not guilty and hold the Government to its burden at trial.

## II.     The Immigration Officers Did Not Violate the Fourth Amendment

The FDOs did not violate the Fourth Amendment, and neither dismissal of the indictment nor suppression is a remedy for the violations the Defendant alleges. First, they had probable cause to seize the Defendant as their mistaking him for Target 1 was objectively reasonable. Ultimately, they had probable cause to arrest the Defendant after he attempted to flee and hit the first vehicle and then almost hit FDO-3. Second, the use of their vehicles for an administrative arrest as appropriate. Therefore, a dismissal is not warranted.

### A. Mistakenly confusing the Defendant with Target 1 was Objectively Reasonable.

Under *Hill v. California*, 401 U.S. 797, 802–05 (1971), the Supreme Court held that when officers have probable cause to arrest a suspect, the arrest remains valid even if officers mistake another person for that suspect. The Court further explained that the Fourth Amendment permits reasonable mistakes by law enforcement so long as the mistake is understandable. *Id.*

Here, officers possessed an administrative warrant which allowed them to take Target 1 into custody. FDO-1 relied on information communicated to him from other

law enforcement entities. These entities listed the Chapel Hill Road residence as the address for the Defendant. These reliable sources also relied on information including a listing of Target 1 as a registered agent of a construction company and that company was associated with the Chapel Hill Road address.

Additionally, the information listing Target 1's address in Morrisville was only 16 days old when FDO-1 used it to conduct surveillance to confirm Target 1's identity and movements. FDO-1 observed an individual matching Target 1's physical description leaving the residence associated with him at 10211 Chapel Hill Road. Additionally, the Defendant and Target 1 have similar age, build, and nationalities. Based on these observations, the officers had a reasonable and articulable basis to believe the driver of the red Honda Civic was Target 1.

Officers only learned after taking the Defendant into custody that he was not the intended target. Therefore, under *Hill*, even if the officers were mistaken about the identity of the individual in the vehicle, the attempted arrest would still be constitutionally reasonable because the officers relied on specific, corroborated information linking the individual to the target of the warrant.

### B. Defendant had a Separate, Valid Reason to be Detained.

In the alternative, the Defendant had committed additional federal offenses independent of the attempted arrest when he backed into a vehicle and attempted to drive off. His subsequent criminal acts created an independently valid reason to arrest the defendant.

11

In *United States v. Sprinkle*, 106 F.3d 613, 616 (4th Cir. 1997), the defendant was stopped for a traffic stop, which was ultimately found to be unlawful. As the officer approached the vehicle, the defendant exited the car. *Id.* Just as the officer began to pat down the defendant, the defendant pushed away and began running. *Id.* The officer ran after him, and the defendant pulled out a handgun and kept running. *Id.* During the chase, the defendant fired a shot at the officer. *Id.* Even though the initial stop was improper, the Fourth Circuit concluded that "[w]hen [the defendant] drew and fired his gun at the officer, he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop." *Id.* at 619. At that point, the officer had probable cause to arrest the defendant "because the new crime purged the taint of the prior illegal stop." *Id.* Thus, "the gun . . . could be legitimately seized." *Id.* at 619-20.

Here, even if the FDOs' identity mistake was not objectively reasonable, the Defendant's actions at the traffic stop gave officers probable cause to arrest on new federal offenses. The Defendant drove into a law enforcement vehicle so forcibly that the vehicle jumped. An FDO then had to jump out of the way after the Defendant reversed and started driving. He then accelerated away from the officers and the damaged vehicle. Those facts supported probable cause to believe the Defendant had violated federal law—an independent basis to arrest the Defendant and learn that he had an administrative order of removal.

12

**C. Dismissal is not an Appropriate Remedy for An Excessive Force Violation as No Evidence was Seized from the Defendant.**

The Government does not concede the officers acted with excessive force. But the Defendant's claim fails for a prior reason: dismissing an indictment is not a remedy for an alleged excessive force violation, nor does the Defendant cite any caselaw to support that extreme request.

The Defendant seeks suppression in the alternative. D.E. 22 at 16. But "even when a [F]ourth [A]mendment violation has concededly occurred, evidence challenged on a suppression motion will not be excluded unless a causal relationship exists between that particular violation and the discovery of the evidence sought to be excluded." *United States v. Clark*, 891 F.2d 501, 505 (4th Cir.1989). The Supreme Court has made clear that "but-for causality" is a necessary "condition for suppression." *Hudson v. Michigan*, 547 U.S. 586, 592; *see also Segura v. United States*, 468 U.S. 796, 804 (1984) (explaining that "the exclusionary rule reaches" "evidence obtained as a direct result of an illegal search or seizure" and evidence "found to be derivative of an illegality"). The proper remedy for alleged excessive force is a § 1983 suit rather than exclusion. *United States v. Watson*, 558 F.3d 702, 704–05 (7th Cir. 2009).

Here, there is no evidence to be excluded because there is no causal link between the alleged excessive force and the charged offenses. The Defendant alleges that officers used an excessive PIT maneuver. D.E. 22 at 15-16. But even if that maneuver was excessive force, it occurred after the Defendant had already committed

13

his criminal conduct.  Therefore, the motion to dismiss on grounds of alleged excessive force should be denied.

**D. The Officers did Not Use Excessive Force to Conduct an Administrative Arrest.**

In evaluating an excessive force claim, a court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865 (1989).

The first factor, the severity of the crime at issue weighs in the Government's favor.  The Government was attempting to seize and arrest Target 1 on an administrative warrant.  However, the officers were also aware that Target 1 was also suspected of being an accomplice to kidnapping and committing a sexual assault. He was arrested for contributing to delinquency of a minor only three weeks prior.

The second factor, that the defendant posed an immediate threat to the safety of the officers or others, weighs in the government's favor.  The Defendant backed into FDO-1's vehicle when he saw FDO-3 exit the vehicle.  The Defendant then then quickly accelerated forward. The Defendant then subsequently collided with two additional vehicles. The video shows the defendant continuing to accelerate even after colliding with three different vehicles.  FDO-2 was attempting to block the defendant in to prevent him from fleeing.  This is a reasonable use of force, especially when the Defendant shows a willingness to accelerate forward, forcing an officer to jump out of the way to avoid being hit by his vehicle.

14

The final factor that the defendant intended to evade arrest via flight or resisting arrest weighs heavily in the government's favor. The Defense insinuates that the Defendant was going to enter a parking lot and surrender to immigration officers. D.E. 22 at 15. He didn't speak to officers nor was he driving slowly. The entire exchange lasts seconds. The Defendant could have surrendered where he was. Instead, he proceeded to back into a car and accelerated, nearly hitting an officer. His aggressive driving when officers attempted to block the Defendant in his car shows that he was attempting to evade arrest, especially when coupled with the knowledge that he too had an administrative arrest warrant.

III. **The Court Should Not Dismiss the Indictment Pursuant to Judicial Supervisory Authority because there was No Misconduct or Prejudice to the Defendant.**

It is well settled law that a court's supervisory power cannot be exercised to dismiss indictments for governmental misconduct absent a showing of prejudice to the defendants. *See, e.g.*, *United States v. Morrison*, 449 U.S. 361, 365–67 (1981); *cf. United States v. Payner*, 447 U.S. 727, 733 (1980) (holding that district court cannot invoke its supervisory power to circumvent the Fourth Amendment standing rules by excluding evidence seized illegally and in bad faith by the government in violation of a third party's—but not the defendant's—constitutional rights). The Defendant cites no cases supporting indictment dismissal in remotely similar circumstances.

The FDOs' actions on that day to effectuate an administrative arrest were appropriate. The agents in this case and in this district did not act in a way that was inherently dangerous. We have argued our position thoroughly above in the excessive

15

force portion of this response. Any supposed inconsistencies between the case agent's recitation of the facts and the video were not significant enough to warrant dismissal of the charges. If anything, the video supports the allegation as laid forth in the indictment.

Even if the Court finds misconduct by the government officers, the Defendant has not been prejudiced by the misconduct. The Defendant can still plead not guilty and have a trial in front of his peers. Therefore, no prejudice exists.

CONCLUSION

For all of the foregoing reasons, the Court should deny the Defenses motion to dismiss the indictment.

Respectfully submitted this 16th day of March, 2026.

W. ELLIS BOYLE
United States Attorney


BY: /s/ *Ashley Foxx*
ASHLEY FOXX
Assistant United States Attorney
Criminal Division
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601
Telephone: 919-856-4500
Bar No. 49208
Raleigh, NC 27601

16

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this 16th day of March 2026 served a copy of the foregoing Government's Motion upon the defendants by electronically filing the foregoing with the Clerk of court using the CM/ECF system which will send notification to:

James Todd
Attorney for the Defendant

W. ELLIS BOYLE
United States Attorney

BY:  /s/ *Ashley Foxx*

ASHLEY FOXX
Assistant United States Attorney
Criminal Division
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601
Telephone: 919-856-4500
Bar No. 49208

17