UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CR-303-FL

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MILTON ERMILO ARREAGA<br>ROBLERO | REPLY TO GOVERNMENT'S<br>RESPONSE TO MOTION TO DISMISS |

The Defendant, Milton Ermilo Arreaga Roblero, by and through undersigned counsel, respectfully replies to the Government's Response in Opposition to Defendant's Motion to Dismiss Indictment. DE 30, 22.

As an initial matter, counsel clarifies that the person the Government calls "Target 1" is Maynor Godinez-Mendez ("Mendez"). There is no discernable reason to conceal his identity, especially since the Complaint names him. DE 1, p.2. At all times relevant to this motion, Mr. Mendez lived at 1001 Village Greenway, Apartment C, Cary, NC 27511, not at Mr. Roblero's residence, 10211 Chapel Hill Road, Morrisville, NC. *Infra* at 6-7. He drove a white Hyundai, not Mr. Roblero's red Honda. *Id.*

This Reply focuses on the arguments advanced in the Government's Response. It incorporates by reference the grounds for dismissal advanced in the Motion to Dismiss, DE 22.

I. **The Video Evidence Demonstrates the Government Cannot Prove Counts I and II Beyond a Reasonable Doubt.**

The Government devotes most of its Response to the contention that the Motion to Dismiss requires resolution of a "factual dispute." Gov't Resp. DE 30, pp.7-9. It does not.

1

Rather, the Government's Response effectively affirms this Court's authority to dismiss the indictment, for three reasons.

First, the Government does not dispute that the video evidence contains the actual, "pertinent facts." *United States v. Weaver*, 659 F.3d 353, 356 n* (4th Cir. 2011) ("A district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the authority of the court to reach the motion, and proffers, stipulates *or otherwise does not dispute the pertinent facts*.") (emphasis added). In fact, the Response relies on the video evidence to chronicle the sequence of the immigration officers' vehicular interdiction of Mr. Roblero. Gov't Resp., DE 30, pp.5-6.

Citing the video evidence, the Government affirms two key facts relevant to Mr. Roblero's motion. After backing up, Mr. Roblero turned the wheels to the left, away from FDO 3's silver Hyundai. *Id.*, p.5 ("[T]he driver of the red Honda began to drive forward while turning the wheels to the left."). Then, FDO 2, driving the 8-passenger Subaru, "continued moving forward, pushing the Honda into the Hyundai that had been driven by FDO-3." *Id.*, p.6.

Second, the Government mistakenly claims the motion presents a "classic factual dispute." *Id.*, p.8. As shown above, the parties do not dispute "the pertinent facts" -- the video evidence. What the Government labels differing "interpretations of the facts in the video," *id.*, p.8, are not factual disputes. Rather, those are opposing legal contentions regarding application of the law to the video evidence. The Court then applies the law to these facts to determine whether "the government is incapable of proving its case beyond a reasonable doubt." *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) ("Under this scenario, a pretrial dismissal is essentially a determination . . . *as a matter of law*.") (emphasis in original).

Third, the case cited by the Government affirms this Court's authority to rule on the motion to dismiss. Gov't Resp., pp.7-9. The Government refers to "black letter law" from *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Gov't Resp., pp.7-8. *Engle* involved a venue challenge "where the government did not proffer or stipulate to the relevant facts below and . . . some of the relevant facts were developed only at trial." *Id.* at 416, n.7. In that same footnote, *Engle* affirms the rule from *Weaver* that the Government disparages. "A district court 'may consider a pretrial motion to dismiss an indictment where the government does not dispute the authority of the court to reach the motion, and proffers, stipulates or otherwise does not dispute the pertinent facts.'" *Id.* (quoting *Weaver*, 659 F.3d at 356 n.*).[1] In such cases, "[t]here is no good reason to force the court to incur the expense and delay of a trial that would inevitably lead to the same outcome as its pretrial ruling." *Weaver*, 659 F.3d at 356 n.*.

Accordingly, the Court can and should rule on the Motion to Dismiss Counts I and II. And for the reasons set forth in the Motion to Dismiss, the Court should dismiss both Counts.

The cases cited by the Government support granting the motion to dismiss Count I. The Government recognizes that "'using a car purely for flight does not satisfy the forcible element'" of 18 U.S.C. § 111. Gov't Resp., p.9 (quoting *United States v. Arrington*, 309 F.3d 40, 42 (D.C. Cir. 2002)). It then states, "fleeing to escape *can* constitute the basis for forcible assault under § 111." *Id.* (emphasis added). Harmonizing case law with the Government's statement means that flight may or may not constitute a forcible assault with a deadly weapon, depending on a defendant's actions.

---

[1] The other case cited by the Government preceded *Weaver* by over a decade and did not address the district court's pretrial authority affirmed by *Weaver* and *Engle. United States v. Williams*, 152 F.3d 294, 298-99 (4th Cir. 1998). Rather, it involved a post-conviction challenge to the facial validity of the indictment for omitting the "use" and "carry" components of an 18 U.S.C. § 924(c) charge. *Id.*

3

Even if the Court imputes FDO 2's subjective belief to an intent to flee rather than safely park and surrender to agents, Mr. Roblero used the car "purely for flight." *Arrington,* 309 F.3d at 42.

By contrast, in the three cases cited by the Government, the defendants did more than merely attempt to flee law enforcement. In *Arrington*, the defendant "'floored it,'" with "three officers still reaching inside the car, and two of them holding on to his body." *Id.* at 42. One officer was "dragged by Arrington's car for at least 50 feet." *Id.* at 42-43.

In *United States v. Alvarez*, the defendant "accelerated *toward* the car carrying the two agents, even though their car was parked and even though one of the agents had opened his door and begun to exit." 445 Fed. App'x 715, 718 (4th Cir. 2011) (emphasis added). In *United States v. Johnson*, the defendant fired eight shots at an unmarked vehicle with DEA agents. 126 F.4th 1000, 1003 (4th Cir. 2025). Like *Alvarez*, *Johnson* also emphasized that "the actions of the Defendant were of such a nature to put the *person against whom they are directed* in fear of immediate bodily harm." *Id.* at 1004 (emphasis added).

Here, the video evidence defeats any attempt to prove Mr. Roblero's actions were directed against any officer that could have placed that person in fear of immediate bodily harm. As the uncontested evidence shows, Mr. Roblero turned away from not toward FDO 3 and his silver Hyundai. Mtn. Dismiss, DE 22, p.5, Gov't Resp., DE 30, p.5.[2] For this reason and those

---

[2] The Government wants to make a mountain out of a mole hill by asserting Mr. Roblero "backed the Honda up with enough force that the rear of [his] vehicle lifted slightly as it struck the front of FDO-1's vehicle." Gov't Resp., pp.5, 12. Any perceived lifting resulted from the Honda backing into the Jeep's two iron tow hitches which functioned as a fulcrum. *See* Mtn. Dismiss, DE 22, p.12 & Attach. 6. The cosmetic repairs to the Jeep to remove the red paint specs and buff the bumper cost about $375. *Id.* Only one to two seconds elapsed between the time the red Honda backs up and when it hits the bumper of FDO 1's Jeep Cherokee, about three to four feet away. Mtn. Dismiss, DE 22, p.5 & Attach. 2.

4

presented in the Motion to Dismiss, the Government cannot prove Count I beyond a reasonable doubt.

Finally, the Government makes no attempt to dispute the grounds for dismissal of Count II, willfully damaging the government vehicles, 18 U.S.C. § 1361. Mtn. Dismiss, DE 22, pp.11-12. Counsel stands by the grounds for dismissal of Count II set forth in the Motion to Dismiss.

The Court should dismiss Counts I and II. "There is no good reason to force the court to incur the expense and delay of a trial that would inevitably lead to the same outcome as its pretrial ruling." *Weaver*, 659 F.3d at 356 n.*.

## II. The Immigration Officers Violated the Fourth Amendment.

The Government's Response fails to refute the grounds for the constitutional violations that each warrant dismissal. The immigration officers' mistaken targeting of Mr. Roblero was objectively unreasonable. And, their unnecessary use of an aggressive and dangerous PIT maneuver to conduct an administrative arrest violated the Fourth Amendment's excessive force prohibition. Mtn. Dismiss, DE 22, pp.12-16.

### A. Mistakenly Targeting Mr. Roblero was Objectively Unreasonable.

After filing the Motion to Dismiss, counsel received investigative reports from the Fuquay Varina Police Department and an important revelation from the Government. This new evidence further demonstrates that the immigration officers' negligence and failure to corroborate their assumptions resulted in the objectively unreasonable targeting of the red Honda and Mr. Roblero on December 2, 2025.

First, the Government's Response reveals a troubling contradiction between a sworn statement in the Complaint and the truth. The affidavit states that the red Honda was the "Target

Vehicle" because it was "known to be utilized by Mendez." Complaint, DE 1, p.2. This is false, as the Government's Response reveals:

> A 302 [FBI report of interview] indicates that FDO-1 originally indicated Target 1 [Mr. Mendez] exited the residence and drove a red Honda Civic [on November 29, 2025]. A follow up report indicates that [Mr. Mendez] left his residence with two unknown males and entered a large white truck.

Gov't Resp., DE 30, p.4 & n.1. With absolutely no ground to believe Mr. Mendez ever used the red Honda, targeting that car on December 2, 2025 was objectively unreasonable.

Second, investigative reports recently received from the Fuquay-Varina Police Department demonstrate that the immigration officers could have and should have confirmed that Mr. Mendez drove a white Hyundai, not a red Honda, and lived at 1001 Village Greenway, Apartment C, in Cary, not at 10211 Chapel Hill Road in Morrisville. Fuquay-Varina Police Reports, Attach. 1.

Between November 11 and 12, 2025, officers and detectives investigated a missing person report that developed into a kidnapping and rape investigation. *Id.*, pp.2, 4-6.[3] Mr. Mendez was identified as a suspected accomplice.

The investigating officers discovered that Mr. Mendez drove a white Hyundai that was frequently parked at 1001 Village Greenway, Apartment C, Cary, NC. *Id.* at 4-6, 10. They also confirmed that Mr. Mendez lived at that apartment with his wife and child. *Id.* at 4-5. On November 12, officers met with Mr. Mendez at that residence. *Id.* at 4.

On November 12, a supervising immigration officer signed an administrative arrest

---

[3] Counsel uses the pagination from the reports and only includes those pages relevant to the Motion to Dismiss. He also redacted details of the sexual assault accusations not relevant to this motion.

6

warrant for Mr. Medez. Attach. 2.[4] It is unclear how Mr. Mendez came onto Immigration's radar that day. Possibly, the FBI agent whom the lead detective contacted for assistance notified ICE. Attach. 1, p.9 ("I contacted the Federal Bureau of Investigation (FBI)'s Human Trafficking Division for assistance with the case.").

On November 13, 2025, the lead detective took out an arrest warrant for Mr. Mendez on a misdemeanor charge of contributing to the delinquency of a minor. Attach. 3. The warrant correctly listed Mr. Mendez's residence, 1001 Village Greenway, Apartment C, Cary, NC. *Id.* That same day the detective requested assistance from the Morrisville Police Department to locate and arrest Mr. Mendez. Attach. 1, p.10. A Morrisville police officer followed Mr. Mendez as he left the Sangam Mart in his white Hyundai, conducted a traffic stop, and arrested him without incident. Gov't Resp., DE 30, p.3; Attach. 1, p.10. The address on the vehicle registration for the Hyundai was 10211 Chapel Hill Road, Morrisville. Attach. 1, p.9.

After the arrest, the detective met with Mr. Mendez at the Morrisville Police Station, along with an agent from Homeland Security Investigations (HSI). Attach. 1, p.10. An officer then took Mr. Mendez to the Wake County Detention Center. The booking officer recorded the 10211 Chapel Hill Road address from the vehicle registration. Mtn. Dismiss, DE 22, p.13, Attach. 7.

There is no indication that the HSI agent who met with Mr. Mendez went to the jail to execute the administrative warrant ICE had issued the day before. Attach. 2. The jail even sent a query to HSI at 9:22 p.m. but got no response. Attach. 4; Gov't Resp., p.3. Six hours after being booked and four hours after ICE received the query, Mr. Mendez was released on his own

---

[4] Presumably, the redacted name is Maynor Godinez-Mendez. For some reason, the Government redacts his name throughout discovery.

7

recognizance. Mtn. Dismiss, DE 22, p.13. The release order had Mr. Mendez's correct address, 1001 Village Greenway, Apartment C, Cary, NC. Mtn. Dismiss, DE 22, p.13, Attach. 8.

This sequence contradicts the Government's assertion that "[s]everal hours after the release, HSI became aware of [Mr. Mendez] and his release." Gov't Resp., DE 30, p3. This is false. ICE secured the administrative warrant the day before, an HSI agent met with Mr. Mendez before he was even taken to jail, and ICE received the jail's query notice four hours before release. Attach. 1, p.10; Attach. 4.

According to the Government, after Mr. Mendez's release, FDO 3's supervisor tasked him with finding Mr. Mendez. Gov't Resp., DE 30, pp.3-4. No discovery received thus far indicates FDO-3 or any immigration officer tried to locate Mr. Mendez at his Cary apartment. The immigration officers apparently did nothing between November 13 and December 2, 2025, to confirm Mr. Mendez's actual address. Nor did they attempt to corroborate their assumption that Mr. Mendez lived at the Morrisville address by reviewing the court records or reaching out to the Fuquay-Varina Police Department. Mtn. Dismiss, DE 22, p.13.

Apparently, the only follow-up happened on November 29, 2025, when FDO 1 "conducted surveillance at 10211 Chapel Hill Road in Morrisville." Gov't Resp., DE 30, p.4. FDO 1 was "200 yards away" from the residence, at an unspecified vantage, with binoculars. *Id.* As clarified above, FDO 1 did not see Mr. Mendez leave in a red Honda. *Supra* at 5. Nor did he see Mr. Mendez's white Hyundai at the Morrisville residence. Given the 200-yard distance from FDO 1's vantage and his track record for mistaking one Hispanic for another, it is far from certain that FDO 1 even saw Mr. Mendez get into a white truck with other individuals on

8

November 29, 2025, or actually saw him or his white Hyundai at that address at any other date.[5]

In sum, the November 13 arrest warrant for Mr. Mendez and the November 14 release order have his correct residential address, 1001 Village Greenway, Apartment C, Cary. The Fuquay-Varina investigative reports confirmed this was his address. Officers even met Mr. Mendez at the Cary apartment, where he lived with his wife and baby.

Rather than verify Mr. Mendez's residential address with the arrest warrant, the release order, or with the Fuquay-Varina Police Department, the immigration officers solely relied on a booking report that put the Morrisville address based on Mr. Mendez's vehicle registration. They made no attempt to corroborate their mistaken assumption by checking the court records, reviewing the investigative reports, or contacting the police officers or detectives who conducted the investigation of Mr. Mendez. They did not, as the Government contends, rely on "specific, corroborating information" to verify Mr. Mendez's actual residence. Gov't Resp., DE 30, p.11. The multiple investigative failures that resulted in mistakenly targeting the driver of the red Honda on December 2, 2025, were objectively unreasonable. The FDOs had no probable cause to target Mr. Roblero, in violation of his Fourth Amendment rights against unreasonable seizures. *Hill v. California*, 401 U.S. 797, 802-04 (1971).

On these grounds alone, the Court should dismiss Counts I & II.

**B.  The Officers Used Excessive Force to Conduct an Administrative Arrest.**

The video defeats the Government's attempts to characterize FDO 2's aggressive and

---

[5] The Government mistakenly states Mr. Roblero is "approximately 5 feet tall and weighs about 110 pounds." Gov't Resp., DE 30, p.3. This description likely came from years ago, when Mr. Roblero first entered the States as a minor and was processed by border patrol. A recent profile generated by either the Marshall's Service or ICE after Mr. Roblero's arrest on December 2, 2025, lists his height as 5'7'' and weight at 184 pounds, thirty pounds heavier than Mr. Mendez. *See* Roblero/Mendez Profile Pics, Attach. 5; Gov't Resp., DE 30, pp.2-3. Counsel provides a side-by-side photo comparison between Mr. Mendez and Mr. Roblero to show their distinguishing facial features. *Id.*

9

dangerous actions as reasonable. It speaks for itself: *Res Ipsa Loquitur*.

As an initial matter, the Government does not contend that ramming the red Honda into FDO 3's silver Hyundai and using a dangerous PIT maneuver to drive the red Honda through the parking lot and into a parked car complied with ICE's own policies and regulations restricting the use of Offensive Driving Techniques. Mtn. Dismiss, DE 22, pp.15-16. Nor does the Government dispute that the officers had other safer and more reasonable means to administratively arrest Mr. Mendez. *Id.* at 15.

The Government instead attempts to justify FDO 2's actions by relying on the tripartite test from *Graham v. Connor*, 490 U.S. 386 (1989). Gov't Resp. DE 30, pp.14-15. This attempt fails.

First, the FDOs were not attempting to arrest Mr. Mendez for any crime, let alone a serious one. *Graham*, 490 U.S. at 396. It was an attempted administrative arrest to place him in civil removal proceedings. The pending misdemeanor charge against Mr. Mendez and the suspicions of his involvement as an accomplice to a kidnapping and sexual assault do not change the nature of the arrest as administrative, not criminal. It also merits emphasis that the immigration officers could have taken Mr. Mendez into custody on November 13 before he was released from Wake County Jail. They also did not make any concerted effort to find and arrest him between November 13 and December 2, or even after that.

Second, Mr. Roblero's attempt to go around FDO 3's silver Hyundai did not immediately threaten the safety of the officers, "the most important" factor. *Lewis v. Caraballo*, 98 F.3d 521, 531 (4th Cir. 2024).

Third, FDO 2's subjective belief that Mr. Mendez intended to flee rather than find a safer

10

place to park is irrelevant. *Graham*, 490 U.S. at 397-99 (officer's subjective belief and motivation are irrelevant to the objective reasonableness of the officer's actions). Motivated by this subjective belief, FDO 2 intentionally rammed the red Honda into FDO 2's Hyundai. Like his subjective belief, his subjective motivations are also irrelevant to Graham's excessive force analysis. *Id.*

Finally, the Government argues "there is no causal link between" FDO 2's actions "and the charged offenses," even though the entire interdiction occurred within ten seconds, Mtn. Dismiss, DE 22, pp.5-6. Gov't Resp., DE 30, p.13. The video and the Government's own concession aptly demonstrate the causal link between FDO 2's actions and the charges brought against Mr. Roblero. Presumably, these charges allege Mr. Roblero intentionally and forcibly assaulted FDO 3 with a dangerous weapon, his red Honda. However, as the video shows and the Government acknowledges, "FDO 2 continued moving forward, pushing the Honda into the Hyundai that had been driven by FDO 3." Gov't Resp., DE 30, pp.5-6. FDO 2, not Mr. Roblero, forcibly rammed the Honda into the Hyundai with a dangerous weapon, his 8-passenger Subaru.

Finally, the Government incorrectly posits the correct remedy for the excessive force violation "is a §1983 suit." Gov't Resp., p.13. This has no basis in law because "§ 1983 does not provide a cause of action against federal officials." *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019).

For these reasons, and those previously advanced, the unconstitutional targeting of Mr. Roblero and unreasonable use of excessive force each warrant dismissal of the indictment.

11

**III.    The Court Should Dismiss the Indictment Pursuant to Judicial Supervisory Authority.**

The Government argues this Court cannot exercise its inherent judicia authority to dismiss the indictment because (1) it should ignore the statements and actions of the immigration officers, (2) no similar cases support dismissal and (3) Mr. Roblero suffers no prejudice because he can just sit in jail for more months and go to trial. Gov't Resp., DE 30, pp.15-16. Mr. Roblero counters each in turn.

First, these are the immigration officers' statements the Government discounts as minor "inconsistencies" with the sworn Complaint Affidavit. The Affidavit states the red Honda was "known to be utilized by Mr. Mendez." DE 1, p.2. As shown above, this is false. *Supra* at 5-6. Next, it states the red Honda "collid[ed] with FDO 3's vehicle," but omits the fact that FDO 2 pushed the red Honda into the silver Hyundai, a material omission. DE 1, p.4. Then the Affidavit states the red Honda "drove over a curb, through a garden bed, and collided with" the parked Porsche. *Id.* This is false. FDO 2 pushed the red Honda into the silver Hyundai, through the parking lot, over the curb and into the Porsche. These false or misleading statements in the Affidavit had to come from the immigration officers, because the affiant relied on their statements.

Likewise, the immigration officers' statements to Officer Davis of the Morrisville Police Department resulted in an accident report that did not correspond to reality. Mtn. Dismiss, DE 22, pp.6-7, 17. They moved the FDO 2's Subaru from behind the red Honda before calling 911, and before Officer Davis arrived. *Id.* Their statements slanted the accident report to their favor and their actions distorted the accuracy of that report. *Id.*

12

The Government also states FDO 2's actions were not "inherently dangerous." Gov't Resp., DE 30, p.15. Again, *res ipsa loquitur*, the video speaks for itself. Mtn. Dismiss, DE 22, pp.15, 17.

Second, the Government incorrectly states Mr. Roblero "cites no cases supporting indictment dismissal in remotely similar cases." Gov't Resp., DE 30, p.15. The Motion to Dismiss cites five similar cases where the court dismissed the same charges on its own, or upon the Government's motion. DE 22, pp.18-19. Mr. Roblero recently submitted a sixth case where the district court dismissed the indictment on the Government's motion, *United States v. Garcia-Martinez*, Case No. 3:26-CR-11-KDB (WDNC Mar. 9, 2026). DE 29.

The troubling pattern in those cases mirror what happened here – the video or other reliable evidence contracted the immigration officers' statements. DE 22, pp.18-19; DE 29. The fact that the Government moved to dismiss in some cases doesn't counsel against granting dismissal in this case. It merely shows the prosecutor did the right thing and didn't make the defendant sit in jail waiting for a ruling on a motion to dismiss or trial. As the prosecutor explained after the *Garcia-Martinez* dismissal, "where it is just and proper to dismiss a case, we won't hesitate to do so." DE 29, p.1.

Third, the Government says that Mr. Roblero suffers no prejudice because he can just stay in jail, "plead not guilty and have a trial in front of his peers." Gov't Resp., DE 30, p.16. This statement displays a callous disregard for Mr. Roblero's due process liberty interests.

Finally, the Court should dismiss the indictment as a "prophylactic tool for discouraging future actions of the same nature" as those manifested by the immigration officers here. *United States v. Houghton*, 554 F.2d 1219, 1224 (1st Cir. 1977); Mtn. Dismiss, DE 22, pp.17-19.

13

Thus, even if the Court hesitates to dismiss on any of the prior grounds, it should exercise its supervisory authority to dismiss the indictment. This inherent judicial authority was designed for this case. *United States v. Hastings*, 461 U.S. 499, 505 (1983) (Supervisory authority "implements a remedy for violation of recognized rights," "preserves judicial integrity," and applies a "remedy designed to deter illegal conduct").

## CONCLUSION

For each of these grounds, the Court should dismiss Counts I and II of the indictment.

Respectfully submitted this 20th day of March, 2026.

> G. ALAN DuBOIS
> Federal Public Defender
>
> ***/s/ James E. Todd, Jr.***
> JAMES E. TODD, JR.
> Assistant Federal Public Defender
> Attorney for Defendant
> Office of the Federal Public Defender
> 201 South Evans Street, Suite 153
> Greenville, North Carolina 27858
> Telephone: 252-830-2620
> Fax: 252-830-2232
> E-mail: Jay_Todd@fd.org
> N.C. State Bar No. 28832
> LR 57.1 Counsel
> Appointed

14

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

ASHLEY H. FOXX
Assistanted United States Attorney
United States Attorney's Office
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on  March 20, 2026 using the

CM/ECF system which will send notification of such filing to the above.

This 20th day of March, 2026.

G. ALAN DuBOIS
Federal Public Defender

*/s/ James E. Todd, Jr.*
JAMES E. TODD, JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
201 South Evans Street, Suite 153
Greenville, North Carolina 27858
Telephone: 252-830-2620
Fax: 252-830-2232
E-mail:  Jay_Todd@fd.org
N.C. State Bar No. 28832
LR 57.1 Counsel
Appointed

15